## [No. 1686.]

### Ben Powers v. The State.

1. Perjury — Indictment — Venue.— See the opinion *in extenso* for an allegation in an indictment for perjury *held* sufficient to charge the venue of the offense on trial in which the perjury is charged to have been committed.
2. Same — Jurisdiction.— The better practice in perjury cases, where the perjury is alleged to have been committed upon the trial of a criminal cause, is that the indictment for perjury should not only allege the jurisdiction of the trial court over the criminal offense in which the perjury was committed, but it should show how, whether by information or indictment, the court acquired such jurisdiction. In reason, however, and under the Codes. of this State, such explicit allegation is not necessary, when the indictment does allege, in general terms, that the court had jurisdiction to try the cause. See this case for the rule applied, and note the opinion *in extenso* for a discussion of the principle, and for a consideration of the authorities bearing upon the subject.

Appeal from the District Court of Bell. Tried below before the Hon. B. W. Rimes.

The conviction in this case was for perjury committed on the trial of one Vince Johnson in the county court of Bell county for carrying fire-arms into an assemblage of persons. The perjury was alleged to have been committed in Bell county, Texas, on the 8th day of March, 1883. The penalty assessed against the appellant was a term of five years in the penitentary.

W. M. Minyard was the first witness for the State. He testified that he was county judge of Bell county, Texas, in March, 1883, and, on the 8th day of that month, presided as such judge over the county court, which was then in criminal session. On that day one Vince Johnson was tried in that court upon an information charging him with carrying a fire-arm into a house where persons had assembled for amusement. The present defendant appeared as a witness in behalf of Johnson, and was duly sworn as such witness by R. H. Turner, deputy county clerk. Having taken the oath, he testified on that trial that he attended a party at the house of Bob Moore in Bell county, on the night of January 17, 1883, and that he saw the whole of the difficulty between Johnson and Hamilton, which was an incident in the prosecution of Johnson. He testified positively that Johnson did not have his hand on the gun in the house while the party was going on; that he himself took up the gun and carried it out of the house. He testified positively that Johnson did not take the gun into the house, and that he did not have his hands on the gun while in the house. When on the stand on that occasion, the defend-

ant gave other evidence which the witness could not now remember. The facts now testified to by the witness were well remembered by him, because the immediate arrest of the defendant for perjury, and the subsequent discussion of his testimony by the people generally, impressed it upon his mind.

R. H. Turner was the next witness for the State. He testified that he was deputy county clerk of Bell county in March, 1883, and acted as such officer on the 8th day of March, 1883, when the trial of Vince Johnson was had. As such deputy clerk the witness administered to the defendant the proper oath when he was introduced on that trial as a witness for the defendant, Vince Johnson. After taking the oath as a witness on that trial, the defendant testified in substance that he attended the party at Bob Moore's house and saw the difficulty between Johnson and Hamilton. He testified positively that Johnson did not carry the gun into the house, and that he did not have the gun in his hands at any time during the progress of the party, from the time it commenced until it closed. He testified further, on that occasion, that he himself took the gun and threw it out, or carried it out of the house, and that Johnson did not touch it inside of the house. Defendant on that occasion persisted in the statements recited, and adhered to them after the prosecuting attorney admonished him three different times that he was under oath. Witness, at the request of the prosecuting attorney, reduced the statements of the defendant to writing at the time he made them, and could not now be mistaken.

The State next introduced in evidence the complaint and information against Johnson and the record of the trial, verdict and judgment.

F. M. Lancaster was the next witness for the State. He testified that he was one of the county court jury that tried Vince Johnson in March, 1883, for carrying a gun into Bob Moore's house while a party was in progress. The defendant testified as a witness for Johnson on that trial. Witness remembered his testimony with regard to the gun. He testified that Vince Johnson did not take the gun into Moore's house, and did not have his hand on it while the party was going on. He testified further that he himself took the gun out of the house when the difficulty between Johnson and Hamilton began.

Jack Hamilton was the next witness for the State. He testified that he was present at a party at Bob Moore's house, four miles from Belton, Bell county, Texas, on the night of January 17, 1883. Some fifteen or twenty persons were present, including witness, de-

fendant, Vince Johnson and George Rine. Witness paid his danc-
ing fee of ten cents, and took his position on the floor to dance,
when he was approached by Vince Johnson and ordered not to par-
ticipate in the dance. He replied that he had paid for, and would
exercise his privilege of dancing. Johnson then said, with an oath:
"If you dance here, you will dance a dead nigger." He, Johnson,
then got a shot-gun out of a side room and stood it up in a corner
in the main room. This was while the dancing was going on.
Johnson again objected to witness joining in the dance. Witness
declared that he had paid his fee and would dance. Johnson re-
plied: "I will send you to h—ll in a minute," and rushed to the
gun, which he got, turned and tried to get it leveled on the witness.
Witness grabbed the gun by the muzzle and held it up. While
Johnson and witness were struggling over the gun, George Rine,
John Estes and Harrison interfered. Rine finally got possession of
the gun and passed it to Estes, who took it into the yard and dis-
charged both barrels.

Witness did not see the defendant near the gun at any time, but
saw him in the room just before the difficulty with Vince Johnson
began. He did not know what part of the room was occupied by
defendant at the time the struggle over the gun occurred. The wit-
ness did know, however, that Vince Johnson brought that gun into
Bob Moore's house on the night in question, and that he had it in
his hands in the house and while the party was in progress. De-
fendant testified as a witness for Johnson on Johnson's trial in the
county court, but the witness, who had left the court-room, did not
hear his testimony.

Richard Kelton was the next witness for the State. He testified
that he attended the party at Bob Moore's house testified to about
by the former witnesses. He saw Vince Johnson when he came
into Bob Moore's house on that occasion. He had a woman on
each arm, and a double-barreled shot-gun on his shoulder. He
passed through the main into the side room, where he left the gun,
and returned and danced two or three sets. Witness saw the de-
fendant in the room, but took no notice of what he was doing when
the difficulty between Johnson and Hamilton occurred. Witness
heard Johnson tell Hamilton that he should not dance; that if he
did dance, he would dance as a dead nigger. Johnson then got the
gun from the shed room and placed it in a corner in the main room.
A few words passed between Johnson and Hamilton, when Johnson
caught up the gun and tried to bring it to bear on Hamilton.
Hamilton, Rine, Estes and Harrison caught, and scuffled over the

gun with Johnson, until they got outside of the room. Rine succeeded in getting the gun from Johnson, and gave it to Estes, who discharged it. Witness did not see the defendant near the parties named during the scuffle. Great confusion ensued. The women and children screamed, and two of the four lights in the room were extinguished. The witness knew positively well that Johnson took the gun into the house where the people were, and that he had it in his hands during the dance. Witness had known the defendant a long time. He, defendant, has never been considered a very intelligent negro, but the witness was unable to say that he had not sufficient discretion to understand the nature of the crime with which he is charged.

Scip Harris was the last witness for the State. He testified that he was present at the party at Bob Moore's. He saw Johnson seize the gun and try to shoot Hamilton, and was one of the party who took the gun away from Johnson. Johnson held the gun by the breech. Hamilton had hold of the muzzle. Defendant was not near the gun during the struggle and did not take it out of the house. Rine, who got the gun from Johnson, was at Lampasas at the time of this trial, stone blind from a blast. Estes was not in Belton.

Several witnesses for the defense testified that they knew the defendant well, and considered him a more than ordinarily ignorant negro. No one of the witnesses, however, could undertake to estimate his mental capacities, and but one to express an opinion as to whether or not he had capacity to understand the nature of the crime of perjury. That witness did not believe him capable of doing so.

The charge of the court, and the line of argument pursued by the prosecuting attorney in his closing address to the jury, were complained of in the appellant's motion for new trial.

*Boyd & Holman,* for the appellant. We call the attention of the court to the action of the trial court in overruling appellant's exceptions, as well as his motion in arrest of judgment. In view of the authorities of this and other States, we say the indictment is not sufficient.

The case of *The State* v. *Webb,* 41 Texas, 67, and the one at bar are identical. In this cause the indictment charges a conclusion of law, in saying the county court had jurisdiction of the case for which Vince Johnson was being tried. A trial judge cannot assume that a county or any other inferior court had jurisdiction of the

subject-matter, unless the facts necessary to give jurisdiction are specially pleaded. Is that done in this case? The indictment charges that "Ben Powers, on the 8th day of March, 1883, in the county of Bell, and State of Texas, in the county court of Bell county, did take his oath on the trial of Vince Johnson for carrying a fire-arm into a house where people were assembled."

Now where did Vince Johnson carry the gun? In what county did he carry the gun? The time and venue so far has not been alleged.

Was the trial of Vince Johnson by affidavit and information, or by indictment? If not by one or the other, then the county court did not have jurisdiction, notwithstanding this indictment says the county court had jurisdiction. If by information or indictment, why not set it out in this indictment so as to have apprised the court of the jurisdiction of the county court, and to show that it charged some offense committed in the county.

On the trial of a criminal cause, the law says, if the defendant does not plead, a plea of not guilty shall be entered for him. The indictment in this cause does not allege that Vince Johnson pleaded guilty or not guilty, or that a plea of not guilty was entered for him. The trial court cannot presume, in the absence of special averment, that on a trial of a cause in the county court, it was had on affidavit and information or indictment, or that a plea was entered; nor that the offense was within the jurisdiction of the county court by reason of its grade; nor that it was committed within the limits of the county where tried; nor that it was not barred by limitation. Nothing can be taken by intendment to assist an indictment. ( Webb v. The State, 41 Texas, 72; State v. Daugherty, 26 Texas, 111; State v. Houston, 12 Texas, 245; Moore v. The State, 7 Texas Ct. App., 608.)

What notice did appellant have that he would be called on to answer for perjury committed on the trial of Vince Johnson for carrying a gun into a house in Bell county? He would ask the question, into whose house; was it a public or private house; in what county was it; in what month and year was it? The answers to all of these questions are left to surmise.

The court permitted the county attorney, over the objection of defendant's counsel, to read in evidence the affidavit and information charging Vince Johnson, in the county court of Bell county, with carrying a gun into a house, which stated the time where and in what county and State it was carried. The indictment at bar does not so charge, and this we contend to be improper, and it should have been excluded.

Mr. Wharton, in his Crim. Law, 6 vol., sec. 2236, says: "Jurisdiction must be specially pleaded." Section 2248 says: "An omission to charge in the bill of indictment that the matter of traverse tried between the State of Tennessee and D., touching which the defendant gave his evidence, was by indictment or presentment, is fatal." In section 2252 he says: "According to this rule, the indictment in this cause should have averred, as a fact, the finding of an indictment in the county court of Cabarrus against Benj. Irwine, and should have set forth that indictment or so much thereof as to show that it charged an offense committed within that county, and of which said court had cognizance, and also set forth the traverse of the plea . . . wherein the issue was joined. Had it done so, it would have appeared upon the face of the indictment whether the alleged false oath was taken in a judicial proceeding before a court having jurisdiction thereof." (*Stewart* v. *The State*, 6 Texas Ct. App., 184; *State* v. *Oppenheimer*, 41 Texas, 82.)

In Waterman's United States Crim. Digest, p. 501, sec. 57, in quoting 6 Yerg., *Stunston* v. *State*, 531, it is said: "Where an indictment for perjury, charged to have been committed in a public prosecution, did not state whether it was on the trial of an indictment or presentment, it was held fatally defective." (See, also, Wat. U. S. Crim. Digest, p. 501, sec. 53; p. 502, secs. 64, 65 and 66.),

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.    This cause having been affirmed at the Tyler branch just before adjournment, without a written opinion, appellant's counsel, within the time allowed by the rules, submitted his motion for rehearing, which was ordered filed and the motion, and record transferred to this branch for determination.

Two objections to the sufficiency of the indictment were urged in the lower court, both by motion to quash and in arrest of judgment. The prosecution was for perjury, and the perjury was alleged to have been committed by defendant in his testimony given as a witness upon the trial of one Vince Johnson, in the county court of Bell county, upon a charge of unlawfully carrying a fire-arm, viz., a double-barrel shot-gun, into a house where persons were assembled for amusement.

The first objection to the indictment for perjury against this appellant was and is that said indictment fails to allege the venue of the offense charged in the case against Vince Johnson, on the trial of which the perjury assigned in this case was committed.

To this objection we deem it only necessary .to make the fol-
lowing quotation from this indictment, viz.: "Whereupon it then
and there became and was material and necessary for the due and
proper enforcement of the penal laws of the State against the having
and carrying of fire-arms into houses where people are assembled for
amusement, to inquire of said Ben Powers, as aforesaid, whether the
said Vince Johnson *did in the county of Bell aforesaid, at the time
as charged,* carry about his person and have a double-barrel shot-
gun in a house where people were assembled for amusement, as
charged," etc. Counsel must have overlooked this allegation when
interposing the objection. At all events, in our opinion, it fully
meets and answers his objection.

2d. It is objected to this indictment that it is fatally defective in
that it fails to allege that the case against Vince Johnson, in which
the perjury was committed, was being prosecuted in the county
court either by or under an indictment or information, and that
such an allegation is essential to show the jurisdiction of the county
court at the time it was trying the case in which the perjury of de-
fendant was committed. Touching the nature and character of the
proceeding in the county court, the charge in the indictment is that
defendant " did then and there make his personal appearance before
the county court, then and there regularly in session for the trial of
criminal causes, with Hon. W. M. Minyard, county judge of said
county, then and there presiding; and a certain criminal cause
being then and there on trial before said court, in which cause The
State of Texas was plaintiff and one Vince Johnson was defendant,
in which cause said Vince Johnson was charged with unlawfully
carrying a fire-arm, to wit, a double-barrel shot-gun, about his per-
son into a house where people were then and there assembled for
amusement, which charge stated and accused said Vince Johnson
of a violation of the penal law of the State of Texas; which said
cause said court then and there had full and competent jurisdiction
to try and determine," etc.

. Independently of this positive declaration of jurisdiction, was it
further necessary to the validity of this indictment that it should
allege that the prosecution against Vince Johnson was by informa-
tion or indictment?

We are free to admit that under two decisions of our supreme
court it would seem that such an allegation was essentially neces-
sary. In *The State* v. *Webb,* 41 Texas, 68, it was held that "an in-
dictment for perjury which charges the false statement under oath
to have been made on the trial of a party charged with a criminal

offense is bad if it fails to state that an indictment had been found against such party, or that the case in which the false statement was made was one over which the court trying it had jurisdiction." And in *The State* v. *Oppenheimer*, 41 Texas, 82, it was held that an indictment for perjury should state when and where the judicial proceeding was pending in which the false statement was made, the name of the judge, court or officer before whom it was made, and whether it was made during an examination or on a trial under indictment. But we cannot tell from the published report of either of said cases whether or not, as in the case at bar, there was in the indictments in said cases an allegation expressly, affirmatively and positively alleging that the court did have jurisdiction of the case in which the witness committed perjury. Most clearly, to our minds, both in reason and under the approved modern authorities, and especially under our Codes, such allegation is not essential where the indictment does, as is the case here, allege in general terms that the court had jurisdiction to try the case; though, perhaps, it would be as well if not the better practice for the pleader to show how its jurisdiction was acquired, that is, whether by indictment or information.

Outside our own State, Mr. Bishop announces the rule as it now obtains thus: " A jurisdiction in the court or other official person being an element without which there can be no perjury, this fact must, as we have seen, be disclosed in some way in allegation. On principle, seeing that such matter is only inducement, it would be sufficient either to charge in words that the officer or tribunal had jurisdiction of these questions, or to aver facts from which the jurisdiction would in law appear,— both not being required." ... " Assuming a recitation of the record of the proceedings wherein the perjury was committed not to be required, the allegation may be that at a time and place, before a court, etc., named, an issue the particulars whereof need not be given, between parties named, came on to be and was in due form of law heard and tried." (Bish. Crim. Proc. (3d ed.), §§ 910, 911.)

Mr. Wharton says: " Under recent statutes in most jurisdictions the detailed nature of the authority of the court need not be given." (Whart. Cr. L. (8th ed.), § 1288.)

With regard to the pleadings in cases of perjury under our Codes, Moore, J., in *Allen* v. *The State*, said: " The averments introductory to the statement of the false testimony, and those which are incidental and collateral to it, such, for instance, as refer to the tribunal in which the false testimony was given and its authority to admin-

ister the oath, the nature of the proceedings pending before it, and
its jurisdiction on the same, are not, it is true, set forth in the in-
dictment with that particularity of detail which was common in the
English courts prior to the statute of 23 Geo. II., ch. 11, and in some
of the American States where this or a similar statute is not in force.
(*State* v. *Gallemore*, 2 Ired., 372; *Lodge* v. *Comm.*, 2 Gratt., 579.)
This particularity of statement, however, in regard to introductory
matters by way of predicate for the averment of the facts which
constitute the offense, has not been customary in indictments of this
kind in our courts even before the adoption of the Code; since which
all that is required in charging an offense is that it be set forth in
plain and intelligible words; the obvious import of which is, if each
of the essential constituents of the offense as defined by the Code
is alleged in plain and intelligible words in the indictment, it is suffi-
cient." (41 Texas, 12. See, also, *Bradberry* v. *The State*, 7 Texas
Ct. App., 375; *West* v. *The State*, 8 Texas Ct. App., 119; *Peters* v.
*The State*, 42 Texas, 7; *Cox* v. *The State*, 13 Texas Ct. App., 479.)

Now, as we have seen, the jurisdiction and competency of the
county court to hear and try the case of Vince Johnson was directly
and positively averred. Besides this, the facts constituting the
offense which was on trial in the county court are also distinctly set
forth and the parties to the proceeding named. From these allega-
tions it is manifest that the case on trial was a criminal case, that
it was a misdemeanor, and from the facts stated this court judicially
knows that it was a case within the jurisdiction of the county
court, and that it could be tried in that court either by information
or indictment, and furthermore we know that it is immaterial as to
the guilt or punishment of defendant for the perjury assigned,
under which form of prosecution the case was being tried when he
committed the perjury. Whilst, perhaps, it would have been more
explicit and satisfactory had the pleader informed us as to the form
of the accusation against Vince Johnson, that is, whether it was by
information or indictment, we cannot see that his failure to do so
can affect the validity of the indictment in this case,— which indict-
ment, in our opinion, contains all the essential allegations for a
charge of perjury under our Code.

So far as the other objections urged to the indictment by learned
counsel for appellant are concerned, suffice it to say that we have
shown that the jurisdiction of the county court is sufficiently
alleged; and it is a rule with regard to other matters of procedure
not concerning the perjury *per se*, that "regularity will be pre-
sumed if the foundations be laid by an accurate statement of juris-

diction." (2 Whart.'s Precedents for Indictments and Pleas (4th ed.), § 577, p. 5 and note.)

We have carefully reconsidered the record in this case in connection with appellant's motion for rehearing. The questions herein discussed are the only ones of any appreciable importance in the record on this appeal, and our views herein expressed are those which induced us to affirm the judgment at Tyler. No reversible error has been made to appear in any of the proceedings had at the trial in the lower court; wherefore the motion of appellant for a rehearing and reversal of the judgment is overruled.

*Rehearing refused.*

[Opinion delivered January 17, 1885.]